## M. G. MORAN, Respondent, v. JOSEPH MONTZ and MARY MONTZ, Appellants.

**Kansas City Court of Appeals, January 5, 1914.**

1. **ATTORNEY AND CLIENT: Legal Services.** The plaintiff sued to recover $200 for legal services, moneys advanced, and liabilities and expenses incurred in connection with the commitment and discharge of defendant, Mary Montz, the wife of defendant, Joseph Montz, to the State Hospital for the treatment of insane persons. *Held*, that as the services rendered and expenses paid were for necessaries furnished the defendant's wife, plaintiff could recover from the husband.

2. **PLEADING: Amendment on Appeal: Statute.** A statement filed in a justice court may be amended upon appeal in the appellate court to supply any deficiency or omission therein, when by such amendment substantial justice will be promoted; but no new item or cause of action not embraced or intended to be included in the original account or statement shall be added by such amendment.

3. **EXECUTIONS: Separate Estate of Married Women.** Before an execution shall be levied upon any separate estate of a married woman, she shall have been made a party to the action and all questions involved shall have been therein determined and shall be recited in the judgment and the execution thereon.

4. ————: ————. An action to charge the separate estate of a married woman with necessaries furnished the husband for the benefit of the wife or family was a proceeding *in rem* rather than one *in personam*, and that to state a cause of action against the wife the petition should describe her personal estate which is sought to be held; that such estate must have been in existence at the time the necessaries were purchased and when the suit was begun and that the judgment and execution should each recite that the debt was for necessaries and describe the property charged with the payment thereof.

Appeal from Buchanan Circuit Court.—*Hon. C. H. Mayer*, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*W. M. Fitch* for appellants.

*E. M. Swartz* for respondent.

JOHNSON, J.—This suit originated in a justice court upon the following statement:

"M. G. Moran, Plaintiff,

v.

Joseph Montz and Mary Montz, Defendants.

"Plaintiff states that the defendants are justly indebted to him in the sum of two hundred dollars for legal services performed, moneys advanced, and liabilities and expenses incurred during the month of May, 1910, in connection with the commitment *and discharge* of defendant Mary Montz, the wife of the defendant Joseph Montz, to State Hospital No. 2, an institution for the treatment of insane persons.

"Plaintiff asks judgment against the said defendants in the sum of two hundred dollars."

After the cause was appealed to the circuit court the italicized words were interlined by leave of court granted over the objection of defendants who claimed and still claim that the amendment was improper since "it added a new item or cause of action, and thereby changed the cause of action as tried in the justice court."

The statute (Sec. 7587, R. S. 1909) reads that a statement filed in a justice court "may be amended upon appeal in the appellate court to supply any deficiency or omission therein, when by such amendment substantial justice will be promoted; but no new item or cause of action not embraced or intended to be included in the original account or statement shall be added by such amendment.

This statute has been liberally construed in the reported cases and the rule is to allow all amendments in the circuit court except those which attempt to inject a new and independent cause of action into the case. [Slaughter v. Davenport, 151 Mo. 26; Bremen v. McMenamy, 78 Mo. App. 122; Clark v. Zane, 165 Mo. App. 505.] The amendment under consideration did not add a new item or cause of action nor enlarge

the cause pleaded in the original statement. Its only effect was to give a more specific statement of the services for which plaintiff claimed the right to recover compensation in the sum of two hundred dollars. The amendment was properly allowed.

A jury was waived in the circuit court and judgment was rendered for plaintiff against both defendants in the sum of one hundred and fifty dollars. Defendants appealed and argue that there is no evidence in the record supporting the judgment.

Defendants, who are husband and wife, resided in Clinton county. In January, 1910, the defendant Joseph was indicted as the murderer of his father and was arrested and committed to the jail in Clinton county without bail. His wife, the defendant Mary, was also indicted as an accessory before the fact and was admitted to bail. After her release on bond she visited the family of Captain Delaney in Cameron. Her health failed rapidly and she became sick in body and mind. Thinking a change of climate and environment might prove beneficial Delaney arranged for her to become a guest in the home of his son who lived in Omaha, Nebraska. The change did not have the desired effect and in the following May the Delaneys, acting under the advice of a physician, concluded to remove her to the State Hospital for the Insane at St. Joseph. Her reason had become completely dethroned and she was taken by a nurse to St. Joseph, where they arrived one Saturday night.

In response to a request telephoned by Captain Delaney from Cameron, J. B. O'Connor, a lawyer of St. Joseph, met the party at the union passenger station and had the demented woman taken to the police station where she was allowed to remain over night in charge of the matron. Plaintiff, an attorney at St. Joseph, had been employed by Joseph Montz to defend the criminal cases against him and his wife under a written contract which provided that plaintiff was "to

have the exclusive control and direction in both of the cases aforesaid, and the right of determining as to the personnel of the co-counsel if any are employed.'' The events we have narrated occurred during this employ-ment.

Being informed that Mrs. Montz had become vio-lently insane and was being held temporarily at the police station, plaintiff went to that place early the next morning and took charge of her, displacing Mr. O'Connor who retired and had nothing more to do with the case. The officer in charge of the police sta-tion refused to allow the woman to remain there any longer. She had not been legally adjudged insane and committed to the asylum by the probate court of Clin- ton county, but plaintiff induced the superintendent of the asylum to receive and care for her pending the application for a commitment and, at his own expense, conveyed her to the asylum and placed her in charge of the superintendent. Immediately thereafter he pre-pared the papers necessary to be filed in the probate court of Clinton county and procurd an order of com-mitment. Later the court appointed a daughter of Captain Delaney guardian of the person and curator of the estate of the demented woman.

Joseph Montz was informed of these proceedings and of the services plaintiff had rendered and was brought by the sheriff of Clinton county to St. Joseph to visit his wife. He had a long conference with plain-tiff and we think the court was justified in finding from the evidence that he approved and ratified all that plaintiff had done and agreed to reimburse and compensate him. Afterward the criminal case against Joseph Montz was tried in Clinton county, resulting in his acquittal. He went to St. Joseph at once and en-listed the services of plaintiff to procure the discharge of his wife from the asylum. Her health had improved rapidly but the superintendent was not satisfied that she had fully recovered and refused to discharge her.

but yielded to the importunities of plaintiff and released her on parole. The demand of plaintiff is not based on the contract employing him to defend the criminal cases and it. is conceded that the services in question were not performed pursuant to that contract. Defendants contend that in rendering them plaintiff acted as a mere volunteer and that no legal obligation was incurred by either defendant to reimburse and compensate him. It is true that the services of plaintiff in procuring the admittance of Mrs. Montz to the asylum as a patient and in subsequently causing a legal commitment to be issued were not performed under the existing contract of employment nor under any express employment by either defendant. Montz did not know of these services nor of the necessity for them until after they had been performed and Mrs. Montz, being insane, was incapable of becoming a party to an express contract. But it does not follow that plaintiff should be turned away empty-handed as a mere volunteer, or as an intermeddler in the affairs of another. Montz was in prison and could not care for nor aid his unfortunate wife who, sick and demented and unable to care for herself, had been lodged in prison in a strange city in default of a more suitable place. Her need of an asylum where she could receive the attention of physicians and nurses was imperative. It required the services of a lawyer to extricate her from her sad and injurious predicament and to secure to her a place where she could have necessary care and medical treatment.

Notwithstanding the statutes placing married women on an equality with single women as to their separate property and property rights, the common law duty of a husband to provide his wife with what are termed necessaries remains unimpaired. The defendant husband, though in prison, was charged in law with the discharge of that duty and when his wife became ill was bound to provide her with proper medical

attention, since such services have been expressly declared by the Supreme Court to be necessaries. [Gabriel v. Mullen, 111 Mo. l. c. 127.] The law will imply a contract on the part of the husband to pay the reasonable value of necessary medical attention voluntarily bestowed upon his wife under exigent circumstances, and we think that legal services which are indispensable to securing the admittance of an insane woman to an asylum for the insane and for the performance of which there is an immediate and most exigent necessity should also be classed as necessaries. Had Montz refused to acknowledge a liability to plaintiff on account of the expenses he incurred and the services he rendered to Mrs. Montz in her dire need, we still would affirm the judgment against him on the ground that the law would imply an undertaking on his part to reimburse and compensate plaintiff. But since the court found that Montz subsequently ratified all that plaintiff had done, agreed to compensate him and then afterward employed him to secure his wife's release from the asylum, there would seem to be no ground on which he might successfully resist the demand of plaintiff. Certainly such subsequent agreement was supported by a sufficient consideration, i. e., a just claim for necessaries furnished his wife.

But we do not perceive any just ground on which the judgment against Mrs. Montz may be sustained. Prior to 1895, the Married Women Statutes (Sec. 6869, R. S. 1899) provided that the separate property of a married woman shall be subject to execution for the payment . . . for any debt or liability of her husband created for necessaries for the wife or family." In Gabriel v. Mullen, supra, decided in 1892, the Supreme Court construed this statute to mean that the property of a married woman might be seized on execution under a judgment against the husband alone, where the judgment debt was for such necessaries.

In 1895, the Legislature amended the statute (see Laws 1895, p. 222) to relieve married women from the hard consequence of having their separate estates seized under executions growing out of proceedings to which they were strangers. The amendment provides that "before any such execution shall be levied upon any separate estate of a married woman, she shall have been made a party to the action, and all questions involved shall have been therein determined, and shall be recited in the judgment and the execution thereon."

Construing this statute, as amended, we held in Megraw v. Woods, 93 Mo. App. 647, that an action to charge the separate estate of a married woman with necessaries furnished the husband for the benefit of the wife or family was a proceeding *in rem* rather than one *in personam*, and that to state a cause of action against the wife the petition should describe her personal estate which is sought to be held; that such estate must have been in existence at the time the necessaries were purchased and when the suit was begun and that the judgment and execution should each recite that the debt was for necessaries and describe the property charged with the payment thereof.

None of these things was done in the present case and, moreover, there is no definite proof in the record concerning the separate estate of Mrs. Montz. All it tells us is that after her commitment to the asylum the probate court appointed a curator of her estate and there is some testimony to the effect that she had property of her own, but the amount, character and description of the property are not shown and, as stated, there was no effort made to comply with the rules we held must be observed in an action to subject the separate estate of a married woman to her husband's debt for necessaries. There is no pretense that Mrs. Montz agreed, after being restored to her right mind, to pay plaintiff and the liability charged against her is not

based upon any express contract of hers. It must rest, if at all, on the statute we have reviewed and as plaintiff has ignored the conditions for enforcing such liability imposed by the statute and defined in our former decision, we must hold that judgment was improperly rendered against the defendant wife.

The judgment is affirmed as to defendant Joseph Montz and reversed as to defendant Mary Montz. All concur.